UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARGARITA CORDERO,                )        NO. CV-05-3727-CT
                                  )
               Plaintiff,         )        OPINION AND ORDER
                                  )
          v.                      )
                                  )
JOANNE B. BARNHART,               )
COMMISSIONER, SOCIAL SECURITY     )
ADMINISTRATION,                   )
                                  )
               Defendant.         )
                                  )
_____ )

     For the reasons set forth below, it is ordered that the matter be **REMANDED** to defendant Commissioner of Social Security Administration ("the Commissioner") for further administrative proceedings consistent with this report and recommendation.

## SUMMARY OF PROCEEDINGS

     On May 19, 2005, plaintiff, Margarita Cordero ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed consents to proceed before the magistrate judge.[1] On

_____

[1] The parties electronically filed a consent to proceed before a magistrate judge on June 8, 2005, but did not sign the consent form. On June 10, 2005, defendant filed a signed consent form. On November 14, 2005, plaintiff's counsel filed a signed consent form.

1  August 29, 2005, plaintiff electronically filed a memorandum in support

2  of her complaint.  On October 31, 2005, the Commissioner electronically

3  filed a brief in opposition to the relief requested in the complaint.

4  On November 8, 2005, plaintiff electronically filed a reply.

5                    **SUMMARY OF ADMINISTRATIVE RECORD**

6  **1.   Proceedings**

7       In early 2003, plaintiff filed an application for benefits,

8  alleging disability since November 3, 2000, due to bilateral carpel

9  tunnel   syndrome;   hypothyroidism;   right   shoulder   and   arm

10 tendonitis/splints; bilateral hand, wrist, and finger joint pain; and

11 arthritis in both knees.  (TR 74-78).[2]  The application was denied.  (TR

12 68-71).  On July 1, 2003, plaintiff filed a request for reconsideration

13 of the initial determination, in which she added to her complaints that

14 she was suffering from depression and anxiety due to the prognosis of

15 sustained work-related injury resulting in an affective mental disorder.

16 (TR 72, 95).  On October 6, 2003, plaintiff's application was denied

17 after reconsideration.  (TR 64-67).

18      On October 28, 2003, plaintiff filed a request for a hearing before

19 an administrative law judge ("ALJ").  (TR 60).  On April 1, 2004,

20 plaintiff and her husband appeared and testified before an ALJ.  (TR

21 366-377).  The ALJ also heard testimony by a vocational expert ("VE").

22 (TR 377-383).  On May 24, 2004, the ALJ issued a decision that plaintiff

23 is not disabled under the Act because, although she is unable to perform

24 her "past relevant work" as a machine operator, she retains the residual

25

26         [2]"TR" refers to the transcript of the record of administrative
27 proceedings in this case and will be followed by the relevant page number(s)
   of the transcript.

28                                      2

functional capacity ("RFC") to perform alternative work activity, <u>i.e.</u>, the Dictionary of Occupational Titles ("DOT") job no. 372.667-042 ("school bus monitor"). (TR 36-42). Thus, the ALJ found that plaintiff is not eligible for benefits. (<u>Id.</u>) On July 21,2004, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 22-32). On December 8, 2004, the request was denied. (TR 16-18). Accordingly, the ALJ's May 24, 2004 decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

**2.** **<u>Summary of the Evidence</u>**

The ALJ's May 24, 2004 decision, (TR 36-42), materially summarizes the evidence in this case.

**<u>PLAINTIFF'S CONTENTIONS</u>**

Plaintiff contends that:

1.  The ALJ failed to fully and fairly develop the record on plaintiff's alleged mental impairments and thyroid condition;

2.  The ALJ failed to present a complete and accurate hypothetical question to the VE;

3.  The ALJ failed to inquire about, identify, and resolve any conflict between the DOT and the VE testimony;

4.  The ALJ erred in failing to translate worker's compensation terminology into Social Security standards;

5.  The ALJ improperly discredited the subjective symptom testimony of plaintiff; and

6.  The ALJ failed to consider the testimony of plaintiff's husband.

1

**STANDARD OF REVIEW**

2    Under 42 U.S.C. § 405(g), this court reviews the Commissioner's

3    decision to determine if: (1) the Commissioner's findings are supported

4    by substantial evidence; and, (2) the Commissioner used proper legal

5    standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

6    Substantial evidence means "more than a mere scintilla," Richardson v.

7    Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

8    Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

9    When the evidence can reasonably support either affirming or

10    reversing the Commissioner's conclusion, however, the Court may not

11    substitute its judgment for that of the Commissioner.  Flaten v.

12    Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

13    1995).  The court has the authority to affirm, modify, or reverse the

14    Commissioner's decision "with or without remanding the cause for

15    rehearing." 42 U.S.C. § 405(g).  Remand is appropriate where additional

16    proceedings would remedy defects in the Commissioner's decision.

17    McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

18

**DISCUSSION**

19    **1.   The Sequential Evaluation**

20    A person is "disabled" for the purpose of receiving social security

21    benefits if he or she is unable to "engage in any substantial gainful

22    activity by reason of any medically determinable physical or mental

23    impairment which can be expected to result in death or which has lasted

24    or can be expected to last for a continuous period of not less than 12

25    months."  42 U.S.C. § 423(d)(1)(A).

26    The Commissioner has established a five-step sequential evaluation

27    for determining whether a person is disabled.  First, it is determined

28

4

whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

**2.   Issues**

   **A.   Duty to Develop the Record (Issue #1)**

Plaintiff contends that the ALJ failed to meet his duty to develop the record with respect to plaintiff's complaints of a mental impairment (depression and anxiety) and her impairment due to her hypothyroidism.

The ALJ has a special duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record exists even when the plaintiff is represented by

1  counsel.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  However,
2  the responsibility of the ALJ is not unlimited.  Tonapetyan v. Halter,
3  242 F.3d at 1150 (duty is triggered when there is ambiguous evidence or
4  when the ALJ finds that the record is inadequate for proper evaluation
5  fo the evidence); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th
6  Cir. 2001) (where record was neither ambiguous nor inadequate ALJ had no
7  duty to develop the record).  Moreover, while an ALJ has a duty to fully
8  and fairly develop the record, plaintiff has the burden of establishing
9  a prima facie case of disability.  Mayes v. Massanari, 276 F.3d at 459.

10             1.   Mental Impairment

11        A mental impairment, such as depression or psychoneurosis, may
12  constitute a disability within the meaning of the Act.  See Briggs v.
13  Sullivan, 954 F.2d 534, 535 (9th Cir. 1992).  A mental impairment must be
14  established by medical evidence consisting of signs, symptoms or
15  laboratory findings, not solely by the plaintiff's statement of symptoms.
16  20 C.F.R. §404.1508; see also Maounis v. Heckler, 738 F.2d 1032, 1034(9th
17  Cir. 1984)(plaintiff's self-serving statements may be disregarded if
18  unsupported by objective medical evidence).  However, the mere presence
19  of a mental impairment does not establish entitlement to benefits.  In
20  order for plaintiff to recover benefits, the evidence must establish that
21  the impairment is accompanied by a physiological or functional loss
22  establishing an inability to engage in substantial gainful activity.
23  Barker v. Secretary of Health and Human Servs., 882 F.2d 1474, 1477-78
24  (9th Cir. 1989).  Alleged mental impairments are evaluated under the same
25  sequential analysis as physical impairments.

26        Plaintiff contends that she suffers from anxiety and depression as
27  a result of her physical ailments.  She first identified this mental

28                                      6

impairment to the Social Security Administration in her request for reconsideration of the initial denial of benefits.[3] (TR 64, 95, 322). Plaintiff reported her anxiety and depression to Dr. Gromis, her treating physician and an orthopedic surgeon. (TR 256, 269). In his reports, Dr. Gromis notes that he reviewed a 12/04/01 report by a Dr. Dianne J. Weiss, who apparently completed a psychological evaluation of plaintiff. (TR 181). Dr. Weiss made no diagnoses of an Axis I or Axis II disorder.[4] Id. The records do not indicate that any doctor ever referred plaintiff to a psychologist or psychiatrist for treatment of her alleged mental impairments.

At the hearing before the ALJ, plaintiff testified that her "principal problems" were due to her right shoulder, hands, wrist and fingers. (TR 368). She further testified that she feels "tired, dizzy" and she cannot sleep. (TR 374). During her testimony plaintiff made no mention of depression or anxiety during questioning by the ALJ or during questioning by her representative. (TR 366-375).

Although the agency specifically informed plaintiff when she applied for benefits that she "must provide medical evidence about [her] disability or assist the social security agency in obtaining such evidence" (TR 75), plaintiff has submitted no medical or other evidence

---

[3]In her initial Disability Report filed with her application, plaintiff asserted that she was "suffering from a combination of severe physical, sleeping and emotional and non-exertional and exertional limitations which have incapacitated her since the alleged on-set date." (TR 86). In her Reconsideration Disability Report, plaintiff specifically identified anxiety and depression as "changes" in her symptoms since she filed her original claim. (TR 95).

[4]The Diagnostic and Statistical Manual of Mental Disorders (4th Ed 1994 (DSM-IV)) provides for a multi-axial method of assessment. Axis I includes clinical disorders or other conditions that may be a focus of clinical attention, such as anxiety disorders and mood disorders. Axis II disorders are personality disorders and mental retardation.

of a medically determinable mental impairment aside from her own assertions. <u>Maounis v. Heckler</u>, 738 F.2d at 1034 ("The ALJ can disregard a claimant's self-serving statements if they are unsupported by objective findings.").  After plaintiff first raised her claim of anxiety and depression in her request for reconsideration, the agency analyst assigned to her case contacted plaintiff's representative to determine whether plaintiff had any history of treatment for her newly-asserted mental condition.  (TR 99).  Plaintiff, through her representative, informed the agency analyst that she was not taking any medication for her alleged mental condition and had no history of treatment for her alleged mental condition.  <u>Id</u>.

Finally, on reconsideration of plaintiff's application, psychiatrist Luyen Luu, M.D., a medical consultant, reviewed plaintiff's claims (including her claim of anxiety and depression) and the analysts' analysis of the evidence supporting those claims.  (TR 322-23).  Dr. Luu noted that there was no evidence of any psychological medically determinable impairment. (TR 321).

Given the foregoing, the record was adequately developed on plaintiff's assertions of anxiety and depression and the ALJ's decision is supported by substantial evidence and is free from material legal error.  Remand is not warranted on this issue.

### 2.   Plaintiff's Thyroid Condition

In her application for disability benefits, plaintiff contends that one of the impairments causing her to be disabled is her hypothyroidism. (TR 78).  Plaintiff testified that she makes regular visits to the Southern California Family Medical Center to monitor her thyroid condition and is taking medication for the condition.  (TR 369-370).  However,

despite being advised that she should submit medical evidence in support of her claim of disability, she did not provide any records from that clinic.[5]  (TR 371-370).

Plaintiff reported her thyroid condition to her treating physicians who submitted medical records to the agency.[6]  (TR 122, 139, 165, 197, 201, 255, 256, 259, 270, 315, 343).  However, although plaintiff informed Dr. Gromis, her treating physician in her worker's compensation case, that her hypothyroidism was caused by "work stress," (TR 195), Dr. Gromis did not refer her to an endocrinologist or other specialist to further evaluate her assertion.  Indeed, plaintiff's primary complaints to her treating physicians in her worker's compensation case related to her shoulder injury and carpal tunnel syndrome.  (See TR 196)(detailing plaintiff's "current complaints" as pain relating to her hands, wrists and right shoulder).

At the hearing before the ALJ, plaintiff testified that she feels sick when she does not take her prescribed thyroid medication, but that the medication does not cause her any side effects.  (TR 373-374).  She did not testify that her hypothyroidism is a principal problem that prevents her from working.  (TR  368-369).  Instead, she identified her principal problems as relating to her shoulder injury and problems with her hands and wrists.  Id.

In sum, plaintiff has not submitted any medical evidence and did not provide any testimony at her hearing indicating that her hypothyroidism,

---

[6]The court notes that plaintiff's medical records contain some references to "hyperthyroidism" (TR 122), but it appears from plaintiff's application and her reports to her treating physicians that her condition is actually hypothyroidism.

1  which is apparently being controlled by medication, causes her to be

2  disabled or prevented from performing work.  On the contrary, the evidence

3  demonstrates that Dr. Gromis, who was apprised of plaintiff's

4  hypothyroidism and heard plaintiff's complaints, recommended plaintiff for

5  vocational rehabilitation.  (TR 186, 201).

6       Given the evidence presented, the record was adequately developed by

7  the Commissioner as to plaintiff's hypothyroidism and the ALJ's decision

8  is supported by substantial evidence and free from material legal error.

9  Accordingly, remand is not warranted on this issue.

10      **B.   Vocational Expert Testimony**

11           **1.   Vocational Expert Hypothetical (Issue # 2)**

12      Plaintiff contends the ALJ erred by giving an incomplete hypothetical

13  to the VE.

14      The assumptions contained in an ALJ's hypothetical to a vocational

15  expert must be supported by the record; otherwise, the opinion of the

16  vocational expert that plaintiff has residual working capacity has no

17  evidentiary value.  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993);

18  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Hypothetical

19  questions posed to the vocational expert must set out all plaintiff's

20  limitations and restrictions.  Embrey v. Bowen, 849 F.2d at 422.  This

21  requirement can be satisfied where the VE is directed by the ALJ to assume

22  specific limitations and fully credit specific testimony heard by the VE.

23  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).  However, a proper

24  hypothetical question may exclude limitations claimed by plaintiff, but

25  which the ALJ finds do not exist based on substantial evidence.  Rollins

26  v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

27      Here, the ALJ heard VE testimony to determine whether, given

28

1 plaintiff's residual functional capacity, she can performs jobs other than
2 her past relevant work (which the ALJ determined she could not perform due
3 to her impairments).  (TR 40).  The ALJ asked the VE a hypothetical based
4 on certain of plaintiff's limitations set forth in the report of her
5 treating physician, Dr. Gromis.  (TR 198, 202, 372, 380).  The ALJ
6 included some of plaintiff's limitations identified by Dr. Gromis, but
7 omitted others. (TR 377-380).  However, before the VE gave his opinion,
8 the ALJ informed the VE about the entire set of material limitations
9 listed in Dr. Gromis' March 7, 2002 report.  (TR 377).

10      Since this matter is being remanded, the Commissioner will have an
11 opportunity to hear additional vocational expert testimony.  Accordingly,
12 on remand the Commissioner should pose a proper hypothetical to the VE
13 that clearly includes all plaintiff's material limitations that are
14 supported by substantial evidence.

15           **2.   Conflicts Between VE Testimony and the Dictionary of**
16                 **Occupational Titles (Issue #3)**

17      Plaintiff contends that the ALJ erred by failing to question the VE
18 concerning potential conflicts between his testimony and the job
19 descriptions in the DOT.  Plaintiff contends that this failure was a
20 violation of Social Security Ruling 00-4p.  In his reply, plaintiff
21 contends that the VE's testimony that plaintiff could perform the "school
22 bus monitor" job despite her inability to speak, read or write in English
23 conflicts with the DOT language requirements for that job.[7]

24

25           [7]In plaintiff's opening brief, she did not identify any conflict between
   the VE's testimony and the DOT.  Plaintiff made this argument for the first
26 time in her reply brief.  See 5/24/2005 Order Re: Further Proceedings at
   3("Plaintiff should not reserve issues for the reply brief").  The court will
27 accept this argument asserted for the first time in the reply on this occasion
   only.  Plaintiff's counsel is cautioned that the court will not consider

28
                                    11

1    The DOT "'is not the sole source of admissible information concerning
2    jobs.'" Johnson v. Shalala, 60 F.3d at 1435 (citation omitted).  Rather,
3    "'the ALJ may rely on the testimony of the vocational expert even if it
4    is inconsistent with the job descriptions set forth in the [DOT].'"
5    Id.(citation omitted). However, the ALJ may rely on such VE testimony
6    "only insofar as the record contains persuasive evidence to support the
7    deviation." Id.

8    Social Security Ruling ("SSR") 00-4p requires that the ALJ identify
9    any conflicts between the VE's testimony and the DOT, elicit a reasonable
10   explanation for any such conflicts, and explain in the decision how any
11   identified conflicts were resolved.  SSRs are binding on Social Security
12   Administration ALJs.  Gamble v. Chater, 68 F.3d 319, n. 1 (9th Cir. 1995).
13   They do not have the force of law, Paxton v. Secretary of Health & Human
14   Services, 856 F.2d 1352, 1356 (9th Cir. 1988), but are entitled to
15   deference.  Chavez v. Department of Health & Human Services, 103 F.3d 849,
16   851(9th Cir. 1996).

17   Here, the VE found that plaintiff could perform the school bus
18   monitor job (DOT No. 372.667-042).  The DOT description for the school bus
19   monitor job has a language development level of L2, which the VE testified
20   "wouldn't require reading or writing but maybe just simple communication
21   with the public." (TR 379).  This is incorrect.  A language development
22   level of L2 requires the ability to do limited reading, writing and
23   speaking in English.[8]  The ALJ found that plaintiff cannot read, write or

---

contentions or arguments made for the first time in a reply in the future.
    [8]Dictionary of Occupational Titles, Appendix C, states that L2 language
development requires the following:

    Reading: Passive vocabulary of 5,000-6,000 words.  Read at a rate of
    190-125 words per minute.  Read adventure stories and comic books,
    looking up unfamiliar words in dictionary for meaning, spelling and

1 speak in English.[9]  (TR 40).  Accordingly, the VE's testimony conflicts

2 with the DOT description for the school bus monitor job.[10]  The ALJ's

3 decision contains no explanation as to how this conflict was resolved.

4     At the hearing, the ALJ specifically questioned the VE about whether

5 English illiteracy would impact the ability to perform the jobs

6 identified.  (TR 380).  The VE testified that such a person could still

7 perform the school bus monitor and hostess jobs.  Id.  The plaintiff's

8 representative further questioned the VE:

9        Q:  . . . And if a person cannot communicate in English
            and these children are asking questions or you see
10          this, would that cause any kind of hazard towards the
            children or to the whole school bus besides the occupation being, you know, the employee probably not knowing where to
11 direct?  Could that become some kind of hazard, the communication skill
   there being absent?

12

13       A.    Yeah, again, it depends on the situation but there's

14

        punctuation.  Read instructions for assembling model cars and airplanes.

15

        Writing: Write compound and complex sentences, using cursive style,
16      proper end punctuation, and employing adjectives and adverbs.

        Speaking: Speak clearly and distinctly with appropriate pauses and
17      emphasis, correct pronunciation, variations in word order, using
        present, perfect, and future tenses.

18

19

20       [9]The ALJ expressed skepticism about plaintiff's inability to speak any
   English based on plaintiff's conduct at the hearing, where she responded to
21 questions asked in English before her Spanish interpreter had an opportunity
   to interpret the question.  (TR 40).  Despite this, plaintiff claimed that she
22 could understand only a few simple words.  Id.  The ALJ ultimately gave her the
   benefit of the doubt and found that she could not communicate in English.  Id.
   He did consider this apparent inconsistency in determining plaintiff's
23 credibility.  Id.

24       [10]The other jobs identified by the VE were host/hostess (DOT No.
   349.667-014) and counter clerk (DOT No. 249.366-010).  (TR 378-79).  The VE
25 testified that a person who could not speak English could not perform the
   counter clerk job.  (TR 380).  The VE testified that the host/hostess job had
26 a language skill level of L2, which is incorrect.  (TR 379).  The hostess
   job's language skill level is L3.  (See DOT No. 349.667-014 (Host/Hostess,
27 Head)).  Nonetheless, the VE testified that a non-English speaker could
   perform the job.  (380).

28
                                        13

> other adults there.  If there is an emergency the bus
> driver is there.  There's probably teachers around.
> A school bus monitor would not be the only adult
> responsible there.  You know, it just depends on the
> situation.  Again, I'm basically looking at the job
> description itself.
>
> Q.   Right.
>
> A.   They're directing children to a bus.

(TR 380-81).

This testimony does not provide a reasonable explanation for the conflict between the DOT's requirements for the school bus monitor job and the VE's testimony that a person illiterate in English could perform the job.  See SSR 00-4p (reasonable explanations for conflicts with the DOT job descriptions include information about the specific job requirements in other reliable publications, information obtained directly from employers, or information from a VE's own experience in job placement or career counseling).  The VE admitted that he was simply looking at the DOT job description when he determined, in conflict with the DOT requirements, that a non-English speaker could perform the job.  Further, the VE's interpretation was based on a misunderstanding of the language proficiency requirements of the L2 language development level.  This is not "persuasive evidence" that justifies an ALJ's reliance on VE testimony that conflicts with the DOT.  See Johnson v. Shalala, 60 F.3d at 1435 (persuasive evidence included "persuasive testimony of available categories in the local, rather than the national job market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the [plaintiff]").

Accordingly, remand is warranted for the Commissioner to continue step five of the sequential evaluation.  On remand, if the Commissioner

14

1 intends to rely on VE testimony that conflicts with the DOT, the
2 Commissioner should provide a legally sufficient basis for doing so.  See
3 Johnson v. Shalala, 60 F.3d at 1435.

4        **C.   Worker's Compensation Terminology and Standards (Issue # 4)**

5        Determinations by other organizations and/or agencies, including the
6 California Workers' Compensation Board, are not binding on the Social
7 Security Administration.  See 20 C.F.R. § 404.1504; see also Young v.
8 Sullivan, 911 F.2d 180, 185 (9th Cir. 1990).  While not binding for
9 purposes of determining eligibility for social security benefits, a state
10 workers' compensation board determination may be introduced as evidence
11 with the Commissioner giving such evidence as much weight as the
12 Commissioner desires.  Wilson v. Heckler, 761 F.2d 1383, 1385 (9th Cir.
13 1985).

14        In addition, because the categories of work under the Social Security
15 disability scheme are measured quite differently than under the California
16 workers' compensation system, workers' compensation terms must, if
17 possible, be translated into social security language.  Desrosiers v.
18 Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).
19 However, even though the categories of work under worker's compensation
20 are measured differently and findings as to such categories are not
21 binding in social security cases, the ALJ is entitled to draw logical
22 inferences from the evidence of those findings and the factual
23 underpinning of such findings.  Macri v. Chater, 93 F.3d at 543-544
24 (citation omitted).

25        Here, plaintiff complains that the ALJ failed to translate the
26 findings of Dr. Gromis, plaintiff's treating physician in her worker's
27 compensation case, into the corresponding Social Security terminology.

28

1 Specifically, plaintiff points to the ALJ's reference to Dr. Gromis'
2 opinion that plaintiff had lost 50 percent of her "pre-injury capacity"
3 to perform certain activities involving her shoulder, arms, hands and
4 wrists. (TR 202).

5      However, The ALJ did not simply adopt findings in plaintiff's
6 worker's compensation case or fail to translate worker's compensation
7 terms into those applicable in social security cases.  Rather, the ALJ
8 properly drew logical inferences from the evidence, including Dr. Gromis'
9 opinion.  As the ALJ indicated, he did not know what plaintiff's "maximum
10 capacity" was, but he did know what plaintiff was able to perform at her
11 prior job before her injury.  (TR 377) ("we know that she performed a job
12 where she had to be able to lift 25 pounds frequently, 50 pounds
13 occasionally, frequently reach, constantly handle, and frequently finger")
14 Accordingly, in determining plaintiff's residual functional capacity, the
15 ALJ simply made a mathematical calculation and cut her pre-injury
16 functional capabilities in half.  See Macri v. Chater, 93 F.3d at 543-544
17 (ALJ reasonably inferred that claimant could perform light work where
18 claimant had "lost approximately half of his pre-injury capacity for
19 lifting, bending and stooping" under California worker's compensation
20 guidelines, and whose prior work required lifting 25 pounds frequently,
21 40 pounds occasionally, and bending constantly).  Thus, the ALJ's
22 determination of plaintiff's residual functional capacity is supported by
23 substantial evidence and is free from material legal error.  Remand is not
24 warranted on this issue.

25   **D.   Credibility of Plaintiff's Testimony (Issue # 5)**

26      Plaintiff asserts that the ALJ improperly discredited plaintiff's
27 subjective testimony concerning her limitations and symptoms.

28

1    The Commissioner's assessment of a plaintiff's credibility is
2 entitled to great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.
3 1985). "Generally, a [plaintiff's] credibility becomes important at the
4 stage where the ALJ is assessing [residual functional capacity], because
5 the plaintiff's subjective statements may tell of greater limitations than
6 can medical evidence alone." Tonapetyen v. Halter, 242 F 3d. at 1147.
7 For this reason, the ALJ may not reject plaintiff's testimony regarding
8 plaintiff's limitations merely because they are not supported by objective
9 evidence. Id., at 1147-48 (citation omitted). In assessing plaintiff's
10 credibility, the ALJ may use "ordinary techniques of credibility
11 evaluation," such as considering plaintiff's reputation for truthfulness
12 and any inconsistent statements in plaintiff's testimony. Id. at 1148.
13 The ALJ must give specific, convincing reasons for rejecting plaintiff's
14 subjective statements. Id. (citation omitted); see also Bunnell v.
15 Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

16    Where plaintiff has produced "medical evidence of an underlying
17 impairment which is reasonably likely to be the cause of the alleged
18 pain," Bunnell v. Sullivan, 947 F.2d at 343, the ALJ may not discredit
19 the plaintiff's allegations of the severity of the pain solely on the
20 ground that the allegations are unsupported by objective medical evidence.
21 Id. at 346-47. In the absence of affirmative evidence that a plaintiff
22 is malingering, the Commissioner's reasons for rejecting the plaintiff's
23 testimony must be clear and convincing. Lester v. Chater, 81 F.3d 821,
24 834 (9th Cir. 1996). If the ALJ rejects the plaintiff's allegations as not
25 credible, he or she "must specifically make findings which support this
26 conclusion." Bunnell v. Sullivan, 947 F.2d at 345.
27    Here, the ALJ did make specific findings as to why the plaintiff's
28

allegations of disabling pain are lacking in credibility.  First, the ALJ found that plaintiff's testimony concerning her symptoms and limitations was contradicted by the medical evidence in the case.  <u>Rollins v. Massanari</u>, 261 F.3d at 857(citing CFR § 404.1529(c)(2)(while ALJ may not reject plaintiff's testimony solely because it is not supported by objective medical evidence, "the medical evidence is still a relevant factor in determining the severity of [plaintiff's] pain and its disabling effects")).  Specifically, the plaintiff's claims that she cannot lift a cup of coffee without pain, has difficulty doing nearly any household chore, and cannot pick up a gallon of milk are at odds with Dr. Gromis' findings as to plaintiff's grip strength.  (Tr 39, 198).  In addition, her claims of totally disabling limitations are not consistent with her treating physician's diagnoses and treatment recommendations.  Dr. Gromis findings were consistent with carpal tunnel syndrome, but he recommended only conservative treatment (physical therapy and non-steroidal anti-inflammatory agents or non-narcotic analgesics) in the present and carpal tunnel surgery in the future. (TR 202).  The licensed physical therapist to which plaintiff was referred noted that plaintiff's symptoms were only "moderately irritable." (TR 39, 155).

Second, the ALJ relied on the fact that, although plaintiff's physicians found that she could not return to her previous job, they did not find that plaintiff would be unable to perform other types of work. (TR 39).  In fact, Dr. Gromis found plaintiff qualified for vocational rehabilitation as a floral arranger. (TR 186, 201).  Pursuant to Dr. Gromis' recommendation, plaintiff took the vocational rehabilitation course in floral arrangement and was able to complete the course. (TR 369).

Third, the ALJ found that despite her complaints of constant pain, plaintiff has not sought aggressive treatment for severe and unremitting pain. (TR 39-40).  Plaintiff has relied primarily on anti-inflammatory medications for her pain.  (TR 39, 370).  The records do not indicate that she has been referred to a pain clinic or received extensive steroidal or invasive treatment. (TR 39, 202, 370, 373).  She has not sought physical therapy since 2002 and, at the time of the hearing, was not taking any pain medications other than topical creams due to her pregnancy.[11] (TR 373-74).  Plaintiff has not sought further treatment and did not have the recommended surgery prior to becoming pregnant. (TR 372).

The court finds that these reasons, in their totality, constitute legally sufficient reasons for discrediting plaintiff's subjective symptom testimony.  Remand is not warranted on this issue.

**F.  Testimony of Plaintiff's Husband (Issue #6)**

Plaintiff contends that the ALJ failed to properly consider the testimony of her husband.

"[D]escriptions by friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987); see also Crane v. Shalala, 76 F.3d 251, 254 (1996).  The ALJ may not discount witness reports solely because they were procured by plaintiff.  Crane v. Shalala, 76 F.3d at 254 (citing Ratto v. Secretary, Dept. of Health & Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)).  Rather, if the ALJ wishes to discount the testimony of a lay witness, she must give reasons that are germane to that witness.  Crane v. Shalala, 76

---

[11]At the time of the hearing, plaintiff was pregnant.

1 F.3d at 254 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

2        Plaintiff's husband's brief testimony (elicited by plaintiff's
3 representative at the hearing) partially supported plaintiff's testimony
4 as to her limitations in performing household chores.  He did not testify
5 that plaintiff could not do any household chores.  Instead, he essentially
6 stated that when he is home from work he tries to help plaintiff out at
7 home with shopping, certain household chores, such as cleaning the
8 bathroom, and any heavy lifting. (TR 376).  He further testified that he
9 helps her dress, monitors her bathing and gives her shoulder massages to
10 alleviate pain. (TR 376).

11        The ALJ referred to this testimony in reaching his determination as
12 to plaintiff's residual capacity and ability to perform other types of
13 work.   (TR 39).   The ALJ found that this testimony essentially
14 corroborated plaintiff's testimony, which he found to be not credible for
15 the reasons discussed in the previous section of this report and
16 recommendation.  Id.  Accordingly, although the ALJ did not expressly
17 refer to this witness when he recounted the reasons that plaintiff's
18 testimony was not credible, those same reasons apply with equal force to
19 the testimony of plaintiff's husband. (TR 39-40).  In any event, the
20 brief testimony of plaintiff's husband does not support plaintiff's claim
21 that she is so totally disabled that she cannot perform any type of work.

22        Accordingly, the ALJ's consideration of the testimony of plaintiff's
23 husband is free from material legal error and is supported by substantial
24 evidence.  Remand is not warranted on this issue.

25                    **REMAND IS APPROPRIATE IN THIS CASE**

26        The decision whether to remand a case for additional evidence is
27 within the discretion of the court.  Sprague v. Bowen, 812 F.2d 1226, 1232

28                                    20

1  (9th Cir. 1987).  Remand is appropriate if the record is incomplete and

2  additional proceedings would remedy defects in the Commissioner's

3  decision.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

4      Having considered the record as a whole, it appears that the present

5  record is insufficiently developed.

6                              **<u>CONCLUSION</u>**

7      ACCORDINGLY, IT IS ORDERED that the matter be **REMANDED** pursuant to

8  sentence four of 42 U.S.C. §405(g) to the Commissioner for further

9  administrative action consistent with this opinion and order.

10

11  DATED: <u>November 15, 2005</u>

12                              ____/ S /_____
                                Carolyn Turchin
13                              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    21